## Adams v. Boone Fiscal Court et al.

(Decided Dec. 3, 1937.)

(As Modified on Denial of Rehearing Feb. 18, 1938.)

C. C. ADAMS for appellant.

SIDNEY GAINES and CHAS. W. RILEY for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF— Affirming.

On the 21st day of November, 1928, the appellant, H. O. Adams, and his wife, Jenny Adams, of Boone county, Ky., entered into a contract with Linney Hubbard whereby they sold to Hubbard and agreed to con-

vey by deed of general warranty three parcels of land situated in Boone county, Ky.

Omitting the caption, names of the parties, etc., the parts of the contract, pertinent to the issues involved, read as follows:

"Witnesseth: That the parties of the first part, for and in consideration of the sum of One Thousand Dollars, which is to be paid to H. Omer Adams, one of the parties of the first part, on or before the first day of March, 1929, the payment of which is guaranteed by the said party of the third part, who joins herein for the purpose of securing the said payment, and for no other purpose, and the further consideration of Eleven Thousand Dollars, to be paid to the said H. Omer Adams in sixteen equal annual payments of Six Hundred and Sixty Dollars each, to be made promptly on the first day of March, each year, beginning on the first day of March, 1930, and continuing regularly and without interruption until the first day of March, 1946, at which last date, the seventeenth and final payment of Four Hundred and Forty Dollars is to be paid to the said H. Omer Adams, and the further considerations hereinafter mentioned, all of which except the said One Thousand Dollars, are secured by a lien retained on the lands and property hereinafter described, do hereby sell and agree to convey by a general warranty deed of conveyance, to the said party of the second part, his heirs and assigns, the following described property." (Then follows a description of the property.)

"* * * To have and to hold the same together with all the appurtenances thereunto belonging, unto the said party of the second part, his heirs and assigns, subject, however, to the further terms and conditions hereinafter set forth, to-wit. * * *"

The conditions named are that the second party (Hubbard) shall keep improvements on the land insured and to pay all taxes which may be assessed and levied against the property, and in the event second party should fail to pay the insurance premiums and taxes, appellant was to pay same and charge it to the installment payments on the purchase price and be se-

cured by the lien retained on the land. And in the event that second party should become delinquent on any installment of the purchase price or fail to pay the taxes and insurance, then all installments of the purchase price, taxes, and insurance, remaining unpaid, shall immediately become due and payable. The contract contained certain other provisions relating to certain chattels, etc., on the farm belonging to the first party, but since these provisions have no bearing on the issues it is not necessary to set them out or consider them. The contract is concluded with the following paragraph:

"Upon final payment of all the said purchase price, and all of the taxes and insurance costs on the said property, the parties of the first part are to make and deliver to the party of the second part a general warranty deed of conveyance for said lands, free and clear of all encumbrances, following the lines of survey and description thereof as made to the said H. Omer Adams, in the deeds of conveyance to him." (Signed by the parties.)

In August, 1933, appellant brought this suit in equity, styled "H. O. Adams, plaintiff, v. Boone Fiscal Court and Boone County, Kentucky, defendants," in which he alleged that he owns and holds by title of record a certain farm in Boone county, Ky., consisting of several tracts of land (the land described in the contract of sale set out above) and that on the ———— day of ————, 19—, and in the last five years, the defendants, wrongfully and without right induced, caused, and procured the removal and destruction of a certain stone wall on his land, about 400 feet long, etc., which had been constructed and built on the land for many years to hold and keep the soil and dirt on his farm and to prevent overflowing waters in the creek from flowing into his premises and over and into the bottom lands surrounding his farm, residence, and other buildings thereon, etc., and asked to recover damages in the sum of $850 on this item. He further alleged that there was a public road which divided his farm, part of it lying on either side of the road, under which road there was an underpass constructed and used by the plaintiff, his tenants, and live stock, for the purpose of passing from one part of his farm to the other part lying on either side of the road, and the fiscal court, its officers, agents,

servants, and employees, against plaintiff's will and without his consent, wrongfully caused and permitted the underpass to be destroyed, and asked to recover damages in the sum of $250 on this item.

The defendants filed a special demurrer to the petition, in which it was set out that the court has no jurisdiction of the defendant or of the subject-matter of the action; that there is a defect of parties plaintiff and defendant; that the plaintiff has no right to maintain the action; and that such cause of action as is attempted to be stated in the petition and petition as amended does not accrue to plaintiff because he long prior to the date of filing petition sold the land described in the petition to Linney Hubbard and placed him in the possession thereof. Defendant also moved the court to require plaintiff to file his contract entered into with Hubbard, which was done, and upon consideration of the special demurrer in connection with the contract, the court sustained the demurrer with leave to amend, but plaintiff failing to further plead, the court finally sustained the demurrer and dismissed the petition. This appeal follows.

It is insisted for appellant that the contract with Hubbard was merely a contract to sell, having the effect only of a title bond and passed no title to Hubbard, and that the legal title being in appellant, he has the right to maintain this action. To support this position, counsel cites section 18 of the Civil Code of Practice; Carey-Reed Company v. Sisco, 251 Ky. 22, 64 S. W. (2d) 430; Gay v. Jackson County Board of Education, 205 Ky. 277, 265 S. W. 772; and many other like or similar authorities. But upon examination of appellant's authorities relied on, we find them to be not in point with the character of cases under consideration.

In Benjamin v. Dinwiddie, 226 Ky. 106, 10 S. W. (2d) 620, 621, Benjamin entered into a contract to purchase of Phillip Sengel certain real property in the city of Louisville, for $12,500. Thereafter, Dinwiddie made a verbal offer to take over Benjamin's contract and pay him $750 therefor, which offer was accepted by Benjamin. Subsequently a deed to the property was made by Sengel in accordance with the terms of the two agreements, and Dinwiddie had the deed made to

his wife, but refused to recognize his contract with Benjamin or to pay the $750, and Benjamin filed suit to recover that sum, alleging the foregoing facts. A demurrer was sustained to the petition and, Benjamin declining to plead further, his petition was dismissed. On appeal to this court the judgment was reversed. The court said:

"1. No question is raised as to the validity of appellant's contract with Sengel. Under it he had acquired a valuable interest in the real estate involved, namely, a vested, equitable title thereto. While Benjamin's title bond could not take the place of a deed, and was insufficient to vest in him the legal title, it did give him an equitable right superior to the claims of all others having notice. Jones & Co. v. Cash, 190 Ky. 96, 97, 226 S. W. 352. He was regarded in law as the owner of property subject to his liability for the unpaid purchase price; his vendor, Sengel, holding the legal title in trust for him and as security for the payment of the agreed consideration. 27 R. C. L. 464; 39 Cyc. 1612; Wheeler v. Gahan, 206 Ky. 366, 267 S. W. 227. Appellant's rights in the property were such as might have been enforced in a suit for specific performance (Wren v. Cooksey, 147 Ky. 825, 145 S. W. 1116), and were a proper subject of bargain and sale."

Under the authority of the Benjamin Case, supra, it appears that Linnie Hubbard was the real party in interest; or at least a necessary party to the action, even though the contract between appellant and Hubbard be given the effect of a title bond only.

The contract, among other things, contains the following language:

"* * * Do hereby sell and agree to convey by a general warranty deed of conveyance, to the party of the second part, his heirs and assigns, the following described property. * * *"

In the habendum clause is the following language: "To have and to hold the same, together with all the appurtenances thereunto belonging, unto the said party of the second part, his heirs and assigns,

subject, however, to the further terms and conditions hereinafter set forth.''

The conditions set forth, referred to, amount to nothing more than the payment of the purchase price. It is seen that the contract is in the form of a deed with a lien retained for the payment of the purchase price; except there is no certificate of acknowledgment. In Ferell et al. v. Childress et al., 172 Ky. 760, 189 S. W. 1149, it was held that a writing in the form of a deed signed by the parties, but which has no certificate of acknowledgment as required by the statute, operates as a conveyance as between the parties and those claiming under them, and is effectual to pass the legal title to the land therein described. See, also, to the same effect, Smith et al. v. Noble et al., 174 Ky. 15, 191 S. W. 641.

Measuring the contract herein involved to the authorities cited, there is no escape from the conclusion that the contract has the force and effect of a deed and operated to pass the title to Hubbard, as between him and appellant, and that the right of action to recover for the trespasses herein complained of was exclusively vested in the latter—unless plaintiff's lien on the land to secure his debt became so impaired because of the wrongs complained of as to imperil his security, since it is only in that case that he would become entitled to maintain the action. See the text in 41 C. J. 652, and cases cited in notes 1 and 2 thereto. Also the case of Mathews v. Silsby Bros., 198 Iowa 1392, 201 N. W. 94, 37 A. L. R. 1116, with an extensive annotation beginning on page 1120 of the A. L. R. volume.

The text in Corpus Juris reference says:

''The mortgagee also has a right of action against a stranger for any act done upon the mortgaged premises which destroys or impairs the value of his security, although this right is conditioned upon the fact of the mortgage debt remaining still unpaid wholly or in part.''

The annotation in the A. L. R. report makes this statement:

''It has frequently been held that a mortgagee or other holder of a lien on real property has a right

of action against a third person for damages to the real property which impaired his security."

Many cases from the highest courts in California, Colorado, Iowa, Massachusetts, Missouri, New Jersey, New York, Ohio, Pennsylvania, Utah, Wisconsin, and some from Canadian courts are cited in support thereof. However, plaintiff, as a lienholder, did not bring himself within that declared right, since he did not allege that the lien for his debt was in any wise impaired, as a result of the wrongs complained of, or that his security was imperiled so as to reduce its value below the amount of his lien, and which facts must exist as conditions precedent to his maintenance of the action. Without such facts appearing, the only one who could maintain the action was his vendee, Hubbard, and the court did not err in sustaining the special demurrer filed to the petition.

These conclusions make it unnecessary to pass upon the other questions raised by the special demurrer.

Wherefore, the judgment is affirmed.